AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
04/29/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____DVE_____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
04/29/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____JD_____ DEPUTY

United States of America

v.

JUAN CARLOS GOMEZ,
      Defendant.

Case No. 8:25-mj-00332-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. In or around February 7, 2023, in the county of Orange in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), § 846, and 18 U.S.C. § 922(g)(5)(A) | See Attached Affidavit |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Daniel Ponce, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: April 29, 2025

*Karen E. Scott*
Judge's signature

City and state: Santa Ana, California

Hon. Karen E. Scott, U.S. Magistrate Judge
Printed name and title

AUSA G. Staples
x3535

**AFFIDAVIT**

I, Daniel Ponce, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Special Agent ("SA") with DEA, and have been so employed since July 2021. I am currently assigned to the Los Angeles Field Division, Orange County District Office. During the course of my employment with the DEA, I have received specialized training concerning violations of the Controlled Substances Act, contained within Title 21 of the United States Code, including during training at the DEA Training Academy in Quantico, Virginia. My training included specialized drug trafficking investigative matters, including, but not limited to, drug interdiction, money laundering techniques and schemes, smuggling, financial investigations, controlled substance identification, physical and electronic surveillance, confidential source management, undercover operations, and the investigation of individuals and organizations involved in the smuggling, cultivation, manufacturing, and trafficking of controlled substances.

2. I have spoken with individuals arrested for drug-related crimes as well as confidential informants working with law enforcement about the possession, sale, and distribution of illegal substances. I have also discussed these matters with other federal agents and law enforcement officers. I am familiar with street terms involving controlled substances,

including for methods of ingestion, packaging, purchasing, selling, transporting, and manufacturing controlled substances. I know that subjects involved in the possession and sale of controlled substances often hide controlled substances in their homes, on their person, and in their vehicles.

3. Additionally, I have participated in many aspects of several drug investigations, including search warrants, conducting surveillance, and arrests. I am familiar with drug trafficking methods of operation, including the distribution, storage, and transportation of controlled substances and the collection of money proceeds of drug trafficking and methods of money laundering used to conceal the nature of the proceeds. I have assisted with investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as violations of related money laundering statutes involving the proceeds of specified unlawful activities and conspiracies associated with criminal drug trafficking activities.

## II.   PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint against and an arrest warrant for Juan Carlos GOMEZ ("GOMEZ") for violations of 21 U.S.C. § 841(a)(1)(distribution of, and possession with intent to distribute, controlled substances), § 846 (conspiracy to distribute controlled substances), and 18 U.S.C. § 922(g)(5)(A) (illegal alien in possession of firearms).

5.   Unless otherwise stated, the facts set forth in this affidavit are based upon my personal observations; my training and experience; oral and written reports about this investigation; and physical surveillance conducted by federal agents or local law enforcement agencies, which has been reported to me either directly or indirectly.  Unless otherwise noted, when I assert that a statement was made, I have either heard the statement directly or listened to a recording of the statement, or the statement was reported to me by another law enforcement officer, either directly or in a written report.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III.  SUMMARY OF PROBABLE CAUSE

A.   Background of Investigation

6.   Since February 2023, DEA agents, along with investigators with the Bureau of Alcohol, Tobacco, and Firearms (ATF), and the Costa Mesa Police Department (CMPD), have been investigating the illegal sales of guns and illicit drugs by Juan Carlos GOMEZ (GOMEZ), a documented member of the violent Anaheim-based street gang, Anaheim Vatos Locos, with a moniker of "Danger."  Since the inception of this investigation, a CMPD undercover detective (UC) has been in contact with GOMEZ on

cellular numbers (714) 746-3886 and (714) 553-1325. During those recorded communications, GOMEZ and the UC coordinated the sale of methamphetamine and nine guns to include ghost guns, pistols, and AR-style riles, as well as ammunition from GOMEZ to the UC between February and May.

7. All of the meetings described below between the UC and GOMEZ were preceded by phone calls and messages between the UC and GOMEZ to set up the sale of guns and methamphetamine from GOMEZ to the UC.

**B. Purchase of Four Ghost Guns and Ammunition on February 7, 2023**

8. On February 7, 2023, in furtherance of a transaction involving the sale of illegal guns, members of the DEA, ATF, and the Costa Mesa Police Department established surveillance established in the area of East Wilken Way in Anaheim.

9. At approximately 2:30, Detective Ronald Stocking with CMPD observed a grey Toyota Camry bearing California license plate 6ENH113 (R/O Gilberto Gomez Garcia, 603 W Bellevue Drive, Anaheim, California) arrive and park near 120 E Wilken Way, Anaheim, California. A man later identified as GOMEZ, and three unidentified Hispanic men, were observed exiting the vehicle and walking into an unknown apartment inside 120 E. Wilken Way. GOMEZ was empty-handed and the other individuals appeared to be carrying beer.

10. Moments later, at approximately 2:38 p.m., the UC arrived and parked in front of 130 E Wilken Way. At this time,

Detective Stocking observed GOMEZ exiting the apartment building with a bag in his hand. GOMEZ asked the UC over the phone if the UC was in a black truck. The UC affirmed. GOMEZ walked over to the UC's vehicle and entered the vehicle on the passenger side. Moments later, GOMEZ exited the UC vehicle and re-entered the apartment building.

11. The UC purchased the following guns and ammunition from GOMEZ:

-Privately manufactured firearm (PMF), further described as a Polymer80 model PF940C 9mm semi-automatic pistol bearing no serial number or other markings (with green frame and one magazine);

-PMF, further described as a Polymer80 model PF940V2 9mm semi-automatic pistol bearing no serial number or other markings (with a Trijicon SRO sight and one magazine);

-PMF, further described as a Polymer80 model PF940C 9mm semi-automatic pistol bearing no serial number or other markings (with gray frame and one magazine); and

-Fifty (50) rounds of Fiocchi 9mm Luger ammunition.

B. **Purchase of Methamphetamine on February 15, 2023**

12. On February 15, 2023, DEA agents from the Orange County District Office (OCDO) and investigators with the Costa Mesa Police Department (CMPD) established surveillance in the

area of Harbor Boulevard and Bellevue Drive in Anaheim, a location which contains a strip mall within walking distance to an address on Bellevue Drive, which is associated GOMEZ.

13. At approximately 3:30 p.m., the CMPD undercover (UC) arrived in the area. Investigators observed GOMEZ walking through a parking lot with a bag in his hand and enter the UC vehicle. When GOMEZ entered the UC vehicle, GOMEZ gave the UC a clear, plastic bag which appeared to contain methamphetamine in exchange for $850.

14. At this same time, GOMEZ removed a Glock 27 pistol from his pocket and showed it to the UC. GOMEZ said the gun would cost $1300. The UC stated that the UC did not have that much cash on hand, but could pay for the gun the following day. GOMEZ accepted this offer and gave the gun to the UC.

15. GOMEZ was then observed exiting the UC vehicle and entering Drift Into Ink tattoo shop located at 855 A Harbor Blvd. in Anaheim. Surveillance was then terminated.

16. At the conclusion of this transaction, agents confirmed GOMEZ had given the UC approximately 482.2 grams of methamphetamine and a Glock 27 handgun bearing serial number GEB491. The Glock 27 handgun was seized and processed by CMPD according to their policies and procedures.

   C.  **Payment for Glock Handgun and Two AR-style Rifles on February 16, 2023**

17. On February 16, 2023, while acting in an undercover (UC) capacity, Detective Santibanez met with Juan Carlos GOMEZ

6

in Santa Ana, California. The purpose of this meeting was so the UC could pay GOMEZ $1300 which was owed for a Glock 27 GOMEZ had given the UC the day prior, on February 15, 2023.

18. In anticipation of this meeting, CMPD investigators and DEA agents established surveillance in the area of 4th Street and Tustin Avenue in Santa Ana. At approximately 3:15 p.m., the UC arrived and parked in a Shell gas station location at 320 N Tustin Avenue in Santa Ana. At this time, investigators observed GOMEZ walking toward the UC vehicle. GOMEZ entered the UC's vehicle and the UC paid GOMEZ the outstanding debt. During this meeting, GOMEZ offered the UC two additional guns, short barrel AR-style rifles, for $1300 each. GOMEZ then exited the vehicle and investigators observed him walking back to his car, a silver Toyota Camry bearing California license plate 6ENH113. This is the same vehicle GOMEZ was driving when he delivered three ghost guns to the UC on February 7, 2023.

19. Later that same day, the UC spoke with GOMEZ and agreed to purchase the AR-style rifles in Orange, California. The UC and GOMEZ agreed to meet behind the Vons store located at 2684 N. Tustin Avenue in Orange. At the conclusion of the second operation on this date, the UC purchased two short-barrel AR-style rifles for $2,600.

### D. Authorization of Warrants for a Tracker and GPS Location Data on February 17, 2023

20. On February 17, 2023, the Honorable Douglas F. McCormick, United States Magistrate Judge for the Central District of California, signed and authorized a warrant allowing for the covert placement of a tracker on a grey Toyota Camry bearing California license plate 6ENH113 with a VIN reported to be 4T1BE32K13U180964.

21. On February 28, 2023, the Honorable John D. Early, United States Magistrate Judge for the Central District of California, signed and authorized an extension for the placement of the tracker for the same vehicle.

22. On February 28, 2023, members of the Costa Mesa Police Department placed a covert tracking device on the Target Vehicle.

### E. Purchase of Two Glock Handguns and Ammunition on March 7, 2023

23. On March 1, 2023, at approximately 1443 hours, GOMEZ sent the UC two photographs of two different Glock pistols. GOMEZ spoke to the UC over the phone and agreed to sell the UC each one for $1,200. On March 7, 2023, the UC paid GOMEZ $2,500, in ATF funds for two handguns and 28 rounds of ammunition. GOMEZ also provided the UC with 113 rounds of 5.56 caliber ammunition at no additional cost.

F.  **Purchase of a Machinegun on March 16, 2023**

24.  On March 16, 2023, the UC spoke with GOMEZ and informed him the UC had the money to pay for a fully-automatic Glock and could meet him later that day. GOMEZ agreed. A short time later, GOMEZ sent the UC a text message with the address of 22633 Oakcrest Circle in the City of Yorba Linda (Denny`s restaurant). The UC agreed to meet GOMEZ at the above-mentioned address between 1600-1700 hours. At approximately 1659 hours, GOMEZ called the UC and asked that the UC park at the Denny`s restaurant. The UC arrived and parked at the Denny`s parking lot. GOMEZ called the UC and asked that the UC drive to the Chick-Fil-A restaurant which was located a short distance away. GOMEZ and the UC met in the parking lot of the Chick-Fil-A. The UC purchased the firearm, 31 rounds of ammunition, three firearm magazines and a gun bag from GOMEZ for $1,800.

25.  After the purchase of evidence, the UC met with ATF SA Thompson who took custody of the firearm, ammunition, and magazine.

G.  **Purchase of Methamphetamine on March 23, 2023**

26.  On March 23, 2023, DEA agents and investigators with the Costa Mesa Police Department established surveillance in the area of Harbor Boulevard and Bellevue Drive in Anaheim, a location which contains a strip mall within walking distance to an address on Bellevue Drive, which is associated GOMEZ.

27.  At approximately 5:00p.m., the UC arrived in the area. At approximately 5:20 pm., investigators observed GOMEZ

being dropped off in front of Drift into Ink, 855 S Harbor Blvd. in Anaheim. GOMEZ was riding in a black Jeep Cherokee, plate unknown. GOMEZ was observed exiting the Jeep without anything in his hands and walking directly into Drift into Ink. Seconds later, GOMEZ was observed exiting Drift into Ink with a bag in his hand, and entering the vehicle driven by the UC. When GOMEZ entered the UC vehicle, GOMEZ gave the UC a clear, plastic bag which contained five bundles of methamphetamine in exchange for $4250.

28. GOMEZ was then observed exiting the UC vehicle and entering Drift Into Ink Tattoo shop. Surveillance was then terminated.

H.   Authorization of GPS Warrant for TT# 562-225-0378

29. On May 1, 2023, the Honorable Karen E. Scott, United States Magistrate Judge in the Central District of California, signed and authorized a GPS warrant for target telephone number 562-225-0378, used primarily by Juan Carlos GOMEZ. This authorization was executed by agents on Monday, May 2, 2023.

I.   Purchase of Methamphetamine on May 9, 2023

30. On May 9, 2023, pursuant to an ongoing investigation and in anticipation of a drug transaction between GOMEZ and the UC, DEA agents established surveillance in the area of 2790 E. Lincoln Avenue in Anaheim, which is the location of a 7-11 store.

10

31. When surveillance was established, SA Miles noted that GPS coordinates associated to GOMEZ' cellular phone showed that the cellular phone was in the area of that address, which had been passed by GOMEZ to the UC for the purposes of meeting.

32. Once surveillance was established, investigators directed the UC to drive through the small parking lot associated with 2790 E Lincoln Avenue, Anaheim, California, and park across the major intersection in a large parking lot with a Del Taco restaurant. When the UC parked, investigators observed a green Chevrolet Avalanche bearing California license plate 7B23506 (R/O Jose Zacarias FLORES, 15413 Thornlake Avenue, Norwalk, California) leave the parking lot of the 7-11, drive across the street, and park next to the UC.

33. Investigators observed a man later identified as Jose Zacarias FLORES Deleon exit his vehicle and approach the UC vehicle. FLORES asked the UC, "On behalf of Danger?" and the UC confirmed. When the UC confirmed, FLORES asked the UC if the UC wanted FLORES to place the methamphetamine in the front seat. The UC affirmed. FLORES then walked back to his vehicle and retrieved a white cardboard box and placed it in the front of the UC vehicle.

34. The UC asked FLORES if FLORES wanted to count the money. FLORES declined. FLORES re-entered his vehicle and drove across the street, parking briefly behind an AM/PM gas station. Investigators were unable to see if FLORES met with anyone. FLORES was behind the AM/PM station for less than five minutes before driving to the 57 freeway. Surveillance was

11

terminated at this time. Investigators did not observe GOMEZ during this meeting, although they believe, based on the GPS pings for his cellular phone, that he was in the area of the drug transaction.

### J. ARREST OF GOMEZ ON FEBRUARY 28, 2025

35. On February 28, 2025, at approximately 12:30 P.M., DEA Orange County District Office (OCDO) Enforcement Group 2 (ENF-2) and Homeland Security Investigations Enforcement Removal Operations (HSI-ERO) established surveillance in the area of 609 W. Bellevue Drive, APT F, Anahein, CA ("Target residence"). The purpose of this surveillance was to assist HSI-ERO with locating and arresting GOMEZ, who is in the United States illegally, for immigration violations.

36. At approximately 2:45 P.M., investigators observed a black Toyota Camry ("Target vehicle") park in the area target residence. Shortly after an unidentified Hispanic female and GOMEZ exited the vehicle. Investigators approached GOMEZ near the trunk of the Target vehicle. GOMEZ was informed by investigators that he was under arrest and arrested without incident.

### IV. CONCLUSION

37. For all the reasons described above, there is probable cause to believe that GOMEZ has committed violations of 21 U.S.C. § 841(a)(1)(distribution of, and possession with intent to distribute, controlled substances), § 846 (conspiracy to

distribute controlled substances), and 18 U.S.C. § 922(g)(5)(A) (illegal alien in possession of firearms).

/s/
Daniel A Ponce
Special Agent
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this <u>29th</u> day of April, 2025.

*Karen E. Scott*
HON. KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE